UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
<u>Richmond Division</u>

IN RE:                                                              CASE NO:

    JOSEPH LORENZA BOYKIN                      11-31128-KRH
    DEIRDRE LARIENE BOYKIN,                     CHAPTER 13
            Debtors.

VIRGINIA CREDIT UNION, INC.,
a Virginia corporation,
            Movant,
vs.
JOSEPH LORENZA BOYKIN,
DEIRDRE LARIENE BOYKIN, and
ROBERT E. HYMAN, CHAPTER 13 TRUSTEE,
            Defendants.

NOTICE OF MOTION AND HEARING ON
MOTION FOR RELIEF FROM STAY OF
<u>11 U.S.C. §362(a)</u>

**NOTICE OF MOTION**

    <u>**Your rights may be affected.**</u>  **You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)**

    If you do not wish the Court to grant the relief sought in the motion, or if you want the Court to consider your views on the motion, then within fourteen (14) days from the date of service of the motion, you must file a written response explaining your position with the Court at the following address: Clerk of Court, United States Bankruptcy Court, 701 East Broad Street, Suite 4000, Richmond, Virginia 23219, and serve a copy on the Movant.  Unless a written response is filed and served within this fourteen (14) day period, the court may deem opposition waived, treat the motion as conceded, and issue an order granting the requested relief.

    If you mail your response to the Court for filing, you must mail it early enough so the Court will receive it on or before the expiration of the fourteen (14) day period.

## NOTICE OF HEARING

Attend the preliminary hearing scheduled to be held on:

June 22, 2011, at 9:30 A.M., in Courtroom 5000
United States Bankruptcy Court
701 East Broad Street, Richmond, Virginia

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the motion for relief from stay, and may enter an order granting the requested relief.

Date: May 17, 2011          Signature:____/s/ Archie C. Berkeley, Jr.____
                            Archie C. Berkeley, Jr., VSB #12581
                            Counsel for Virginia Credit Union, Inc.
                            BERKELEY, CURRY & COOK
                            1301 North Hamilton Street, Suite 200
                            Richmond, Virginia 23230-3959
                            Telephone No: (804) 644-0345

Certificate and List of Service

I hereby certify that on this 17th day May, 2011, I have electronically or by first-class mail, postage prepaid, served a true copy of this Notice of Motion and Hearing on Motion For Relief From Stay to the parties listed below:

_____/s/ Archie C. Berkeley, Jr.____

Rudolph C. McCollum, Jr.,          Robert E. Hyman,
Counsel for the Debtors;           the Chapter 13 Trustee;

Joseph Lorenza Boykin (a Debtor)   Deirdre Lariene Boykin (a Debtor)
17 Old Sellers Way                 17 Old Sellers Way
Richmond, Virginia 23227           Richmond, Virginia 23227

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
<u>Richmond Division</u>

IN RE:                                                                  CASE NO:

    JOSEPH LORENZA BOYKIN                          11-31128-KRH
    DEIRDRE LARIENE BOYKIN,                          CHAPTER 13

                  Debtors.

VIRGINIA CREDIT UNION, INC.,
a Virginia corporation,
                Movant,

vs.

JOSEPH LORENZA BOYKIN,

DEIRDRE LARIENE BOYKIN, and

ROBERT E. HYMAN, CHAPTER 13 TRUSTEE,

                Defendants.

MOTION FOR RELIEF FROM STAY
OF 11 U.S.C. §362(a)

TO: THE HONORABLE KEVIN R. HUENNEKENS, CHIEF BANKRUPTCY JUDGE:

    Virginia Credit Union, Inc., a Virginia corporation, the Movant herein, by

counsel, respectfully files this Motion pursuant to Federal Rules of Bankruptcy

Procedure 4001 and 9014 and represents to the Court in support thereof as follows:

Archie C. Berkeley, Jr.; VSB #12581
Counsel for the Movant
BERKELEY, CURRY & COOK
1301 North Hamilton Street, Suite 200
Richmond, Virginia 23230-3959
Telephone No: (804) 644-0345

1.  That on February 22, 2011, Joseph Lorenza Boykin and Deirdre Lariene Boykin (the "Debtors"), filed in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division, a petition for relief under Chapter 13 of the Bankruptcy Code, 11 U.S.C. §1301 et seq., being Bankruptcy Case No: 11-31128-KRH (the "petition").

2.  That this Motion is filed pursuant to 11 U.S.C. §362(d) and Federal Rules of Bankruptcy Procedure 4001 and 9014, seeking relief from the automatic stay of 11 U.S.C. §362(a).

3.  That the Movant, Virginia Credit Union, Inc., is a Virginia corporation with its principal place of business in Richmond, Virginia.

4.  That the Debtors, on or about December 12, 2007, for valuable consideration, executed with the Movant in Richmond, Virginia, a Loanliner Open-End Home Equity Credit Agreement and Truth in Lending Disclosure and Loanliner Home Equity Addendum (the "Agreement/Addendum") in the face amount of $90,300.00 and with interest initially accruing thereon at an ANNUAL PERCENTAGE RATE OF 10.250%.  (Copies of said Agreement/Addendum are attached hereto as Movant's Exhibit A.)  There are no setoffs or counterclaims to said debt.

5.  That the Debtors' estate includes the following described real estate and all improvements thereon (the "Property") and is generally known as 17 Old Sellers

Way, Richmond, Virginia 23227 (Henrico County):

> ALL that certain lot, piece or parcel of land, with all improvements thereon and appurtenances thereto belonging, lying and being in the Fairfield District, Henrico County, Virginia, known, numbered and designated as Lot 85, Block B, as shown on subdivision plat entitled "Sterling Forest 3", prepared by Bay Design Group, Engineering, Surveying & Land Planning, dated October 18, 2002, and recorded in the Clerk's Office, Circuit Court of Henrico County, Virginia, in Plat Book 117, Pages 12-17, reference to which plat is hereby made for a more particular description of the property herein conveyed.

6.  That the Agreement/Addendum is secured by a Credit Line Deed of Trust on the aforesaid real estate, and all improvements thereon, given from Joseph L. Boykin and Deirdra Boykin to David E. Nagle and Katja Hill, Trustees, dated December 12, 2007, and recorded December 27, 2007, in the Clerk's Office of the Circuit Court of Henrico County, Virginia, in Deed Book 4453, at Page 2437, a copy of which Credit Line Deed of Trust is attached hereto as Movant's Exhibit B.

7.  That the principal balance of $70,420.03 is now due and owing to the Movant by the Debtors under the Agreement/Addendum, with interest accruing thereon at the current ANNUAL PERCENTAGE RATE of 6.00% from February 1, 2011, until paid, plus accrued late charges of $157.18, and the attorney's fees and costs incurred by this proceeding.

8.  That the Debtors' Chapter 13 Plan filed on February 22, 2011, and confirmed by Order of this Court entered on May 2, 2011, provides for post-petition payments on the Movant's allowed, secured claim to be paid directly by the Debtors

outside of their Chapter 13 Plan and, in accordance with the terms of the Agreement/Addendum.

9.    That since the filing of the petition herein on February 22, 2011, the Movant has not received any payments from the Debtors on the Agreement/Addendum secured by the Property.

10.   That the Debtors are now in default under the terms of the Agreement/Addendum secured by the property for their monthly payments of 1.50% of the outstanding, monthly loan balance due to the Movant from February 28, 2011, through and including April 28, 2011, totalling $3,143.01, plus accrued late charges of $157.18, and the attorney's fees and cost incurred by this proceeding.  Another monthly payment of $1,056.30 is due to the Movant on May 28, 2011.

11.   That the Property is being used by the Debtors to the detriment of the Movant.

12.   That the Movant is not adequately protected for the reasons set forth in paragraphs 8. through 11., and cause exists under 11 U.S.C. §362(d) to terminate the automatic stay provided to the Debtors under 11 U.S.C. §362(a).

13.   That should the Court grant relief from the stay of 11 U.S.C. §362(a) as requested, and should the Movant realize an overage from the liquidation of the Property above the amount of its debt, including principal, interest, late charges, foreclosure expenses, attorney's fees and costs as provided in its

Agreement/Addendum and Credit Line Deed of Trust, the Movant will promptly so advise the Court and pay the same to any junior lienholders of record in accordance with its security documents

14.   **That the Debtors/Defendants and their counsel, served herewith as set forth in the Proof of Service, shall have fourteen (14) days from the date of service of this motion in which to file with the U. S. Bankruptcy Court for the Eastern District of Virginia, Richmond Division, a written response hereto with a copy of said response to be served upon counsel for the Movant.**

WHEREFORE, Virginia Credit Union, Inc., respectfully moves this Court to enter an Order terminating or modifying the stay of 11 U.S.C. §362(a).

VIRGINIA CREDIT UNION, INC.,
a Virginia corporation


By   /s/ Archie C. Berkeley, Jr.   
(of Counsel)

Archie C. Berkeley, Jr.; VSB #12581
BERKELEY, CURRY & COOK
1301 North Hamilton Street, Suite 200
Richmond, Virginia 23230-3959
Telephone No: (804) 644-0345

PROOF OF SERVICE

I hereby certify that on this 17th day of May, 2011, I did electronically serve Rudolph C. McCollum, Jr., counsel for the debtors, and Robert E. Hyman, the

Chapter 13 Trustee; and I did mail, by first-class mail, postage prepaid, true and exact copies of the foregoing Motion For Relief From Stay to Joseph Lorenza Boykin at 17 Old Sellers Way, Richmond, Virginia 23227, a debtor/defendant herein; and to Deirdre Lariene Boykin at 17 Old Sellers Way, Richmond, Virginia 23227, a debtor/ defendant herein.

_____ /s/ Archie C. Berkeley, Jr. _____

Virginia Credit Union, Inc.
POB 90010
Richmond, VA 23225-9010
Phone: (804) 323-6000
Toll Free: 1-800-285-5051



**LOANLINER**
HOME EQUITY SYSTEM

## Open-End Home Equity Credit Agreement and Truth in Lending Disclosure

| BORROWER 1 NAME | JOSEPH L BOYKIN | ACCOUNT NUMBER | |
|---|---|---|---|
| BORROWER 1 ADDRESS | 17 OLD SELLERS Wy RICHMOND, VA 23227 | | |
| BORROWER 2 NAME | DEIRDRE L BOYKIN | ACCOUNT NUMBER | |
| BORROWER 2 ADDRESS | 17 OLD SELLERS Wy RICHMOND, VA 23227 | | |

### CREDIT AGREEMENT AND TRUTH IN LENDING DISCLOSURE

**INTRODUCTION.** This LOANLINER Home Equity Plan Credit Agreement and Truth in Lending Disclosure will be referred to as this "Plan". This Plan consists of this Agreement and the accompanying Addendum which is incorporated into and becomes a part of this Credit Agreement and Truth in Lending Disclosure. The words "you," "your," and "Borrower" mean each person who signs this Plan. The words "we," "us," "our," "Lender," and "credit union" mean the credit union whose name appears above or anyone to whom the credit union transfers its rights under this Plan.

**1. HOW THIS PLAN WORKS.** This Plan establishes a revolving line of credit account ("account"). You and the credit union anticipate that you will obtain a series of advances under this Plan from time to time. The maximum amount you can borrow ("credit limit") is disclosed in the Addendum. It is the amount of credit you may borrow, repay all or a portion and re-borrow subject to the terms of this Plan.

**2. PROMISE TO PAY.** You promise to repay to the credit union, or order, all advances made to you under this Plan, plus finance charges, other applicable charges, and costs of credit insurance for which you are responsible under this Plan. You agree to pay the Minimum Payment on or before the due date.

**3. JOINT ACCOUNTS.** If this is a joint account, each of you must sign this Plan and you will be individually and jointly responsible for the promises you make in this Agreement, including paying all amounts owed. This means that the credit union can require any one of you to repay all advances plus applicable finance charges, other applicable charges, and credit insurance costs. Unless the credit union's written policy requires all of you to sign for an advance, each of you authorizes the other(s) to obtain advances individually and agrees to repay advances made to the other(s). The credit union can release one of you from responsibility under this Plan without releasing the other(s).

**4. SECURITY INTEREST.** This Plan is secured by a mortgage, deed of trust, security deed, or security agreement (the "security instrument") in your dwelling which is described in the Addendum.

**5. PROMISES IN SECURITY INSTRUMENT.** The security instrument you sign the same day you sign this Plan is incorporated by reference into this Plan. You must keep all the promises you made in the security instrument.

**6. APPLICATION OF PAYMENTS.** Payments will be applied in the order the credit union chooses to any finance charges, credit insurance costs, and other applicable charges due before being applied to your unpaid balance.

**7. CREDIT LIMIT.** You promise not to request or obtain an advance that will make your balance exceed your credit limit. Your credit limit will not be increased if you exceed your credit limit. If you exceed your credit limit, you agree to repay the excess immediately.

**8. ACCESS DEVICES.** You can obtain credit advances in any manner authorized by the credit union from time to time. Your application for this account also serves as a request to receive any additional access devices which may be available in the future in connection with this Plan. The terms of this Plan will also apply to any future access devices we issue to you for accessing this Plan.

**9. COST OF CREDIT.** The finance charge is the cost you pay for credit. Unless described otherwise on the Addendum, the finance charge on each new advance begins on the date of the advance and continues until the advance has been paid in full. There is no "free ride period" which would allow you to avoid a finance charge. To compute the finance charge, the unpaid balance for each day since your last payment (or since an advance if you have not yet made

(continued on next page)

### SIGNATURES

By signing below you agree that you have read the LOANLINER Home Equity Plan Credit Agreement and Truth in Lending Disclosure and Addendum and agree to be bound by the terms of the Agreement. You also acknowledge receipt of a copy of this Agreement, and the Home Equity Early Disclosure and handbook entitled "When Your Home is On the Line: What You Should Know About Home Equity Lines of Credit" given to you at the time of application.

**Notice to Vermont Borrowers: NOTICE TO COSIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.**

| X _Joseph L. Boykin_ | 12/12/2007 | X | 12/12/200X |
|---|---|---|---|
| BORROWER 1 SIGNATURE | DATE | WITNESS SIGNATURE | DATE |
| X _Deirdre J. Boykin_ | 12/12/2007 | X | 12/12/200X |
| BORROWER 2 SIGNATURE | DATE | WITNESS SIGNATURE | DATE |

© CUNA MUTUAL GROUP, 1995, 1999, 2000, 2001, ALL RIGHTS RESERVED    MOVANT'S EXHIBIT A    EST104 (LASER)

## CREDIT AGREEMENT AND TRUTH IN LENDING DISCLOSURE (continued)

a payment) is multiplied by the applicable periodic rate. The sum of those amounts is the finance charge owed. The periodic rate and corresponding annual percentage rate are disclosed in the Addendum. The balance used to compute the finance charge is the unpaid balance each day after payments and credits to that balance have been subtracted and any new advances have been added.

**10. ANNUAL PERCENTAGE RATE.** The annual percentage rate under this Plan includes only interest and no other costs. The Addendum shows the current interest rate as a periodic rate and a corresponding annual percentage rate. If the interest rate for this Plan is a variable interest rate the Addendum explains how the variable interest rate works. If we forego an annual percentage rate increase, we may return to the full index and margin at a later adjustment subject to any rate limitations.

**11. OTHER CHARGES.** In addition to finance charges, your account is subject to certain other charges as described in this Plan and the Addendum. The credit union can add any of these other charges to your balance or you can pay them in cash.

**12. CHARGES TO YOUR ACCOUNT.** We may charge your account to pay other fees and costs that you are obligated to pay under this Plan or under the security instrument. In addition, we may charge your account for funds required for continuing property insurance coverage or costs to protect or perfect our security interest in your dwelling. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your dwelling. If you do not pay your property taxes, we may charge your account and pay the delinquent taxes. Any amount so charged to your account will be a credit advance. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**13. LENDER'S RIGHTS:**

(a) **Termination and Acceleration.** In accordance with applicable law, we can terminate your credit line and require you to pay us the entire outstanding balance in one payment, and charge you certain fees or suspend additional extensions of credit or reduce your credit limit, if any of the following happen:

*For Wisconsin Borrowers Only:*

(1) You fail to make a required payment when due two times within a twelve month period, or

(2) Your failure to observe the terms of this Plan materially impairs the condition, value or protection of, or our rights in, the property securing this Plan.

*For All Other Borrowers:*

(1) You engage in fraud or make a material misrepresentation at any time in connection with this Plan. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition.

(2) You do not meet the repayment terms of this Plan.

(3) Your action or inaction adversely affects the collateral for this Plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the property, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the property, creation of a senior lien on the property without our permission, foreclosure by a prior lienholder, use of the dwelling for prohibited purposes, or taking of the property through eminent domain.

(b) **Suspension or Reduction.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your credit limit during any period in which any of the following are in effect:

(1) The value of the property securing this Plan declines significantly below the property's appraised value for purposes of this Plan. This includes, for example, a decline such that the initial difference between the credit limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

(2) We reasonably believe that you will be unable to fulfill your payment obligations under this Plan due to a material change in your financial circumstances.

(3) You are in default of a material obligation of this Plan. We consider all of your obligations to be material. No default will occur until we mail or deliver a notice of default to you.

(4) We are precluded by government action from imposing the annual percentage rate provided for under this Plan.

(5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than 120 percent of the credit limit.

(6) We have been notified by a regulatory authority that continued advances may constitute an unsafe and unsound business practice.

(7) The maximum annual percentage rate under this Plan has been reached.

(8) *For Wisconsin Borrowers Only:* You engage in fraud or material misrepresentation in connection with the Plan.

(c) Change in Terms. We may make changes to the terms of this Plan if you agree to the change in writing at that time, if the change will unequivocally

(Continued on next page)

© CUNA MUTUAL GROUP, 1998, 1999, 2000, 2001, ALL RIGHTS RESERVED

EST104 (LASER)

| Virginia Credit Union | JOSEPH L BRANCH | | Date | 12/12/2007 |

## CREDIT AGREEMENT AND TRUTH IN LENDING DISCLOSURE (continued)

benefit you throughout the remainder of this Plan, or if the change is insignificant (such as changes relating to our data processing systems). We may also change the terms of this Plan in accordance with other reasons, if stated on the Addendum. If this Plan follows an index and the index is no longer available, we will choose a new index and margin. The new index will have a historical movement substantially similar to the original index, and the new index and margin will result in an annual percentage rate that is substantially similar to the rate in effect at the time the original index becomes unavailable.

**14. USE OF ACCOUNT.** You promise to use your account for consumer (personal, family or household) purposes, unless the credit union gives you written permission to use the account also for agricultural or commercial purposes, or to purchase real estate.

**15. MEMBERSHIP IN CREDIT UNION.** You must be a member of the credit union to obtain credit advances.

**16. CONFLICTING INSTRUCTIONS.** You agree not to provide conflicting instructions to us regarding your Plan (such as instructing us not to make credit advances to a joint borrower).

**17. PREPAYMENT.** You may prepay all or part of what you owe at any time without any prepayment penalty.

**18. CANCELLATION BY YOU.** You can cancel your right to future credit advances under this Plan, by notifying us in writing. If this is a joint account and one of you cancels future credit advances under this Plan, the cancellation will apply to both of you, unless the credit union gives written notice to one of you that you may continue to obtain advances. Despite cancellation, your obligations under this Plan will remain in full force and effect until you have paid us all amounts due.

**19. TAX CONSEQUENCES.** You should consult a tax advisor regarding the deductibility of interest and charges under this Plan.

**20. STATEMENT AND NOTICES.** On a regular basis the credit union will send a statement showing all transactions on your account during the period covered by the statement. Statements and notices will be mailed to you at the most recent address you have given the credit union in writing. Notice to any one of you will be notice to all.

**21. TRANSFER OR ASSIGNMENT.** You cannot assign your rights and obligations under this Plan. In spite of any divorce or agreement between joint borrowers, each is responsible for the total amount owed under this Plan. Subject to applicable law, we reserve the right to sell or transfer this Plan to another lender, entity or person, and to assign our rights under the security instrument.

**22. UPDATING INFORMATION.** You promise that you will give us updated financial information and information about matters affecting the title and value of the property securing this Plan. You agree that we may obtain credit reports and appraisals at our option and expense for any reason.

**23. PROPERTY INSURANCE.** You promise to insure the property that secures this Plan, in the amount the credit union requires, against fire and other hazards (including flood insurance if the credit union requires it). You may obtain property insurance from anyone you want that is acceptable to the credit union. We have the right not to accept the insurer for reasonable cause. Subject to applicable law, if you fail to obtain or maintain insurance as required, we may purchase insurance to protect our own interest, add the premium to your balance and/or pursue any other remedies available to us.

**24. CREDIT INSURANCE.** Credit life and/or credit disability insurance is optional under this Plan. If you qualify for and purchase the insurance from us, you authorize us to add the insurance premiums monthly to your loan balance and charge you interest on the entire balance. If you elect credit insurance, your payments may increase or the period of time necessary to repay your advance may be extended. The credit insurance rates may change during this Plan. If the rates change, we will provide any notices required by applicable law.

**25. NO WAIVER.** The credit union can delay enforcing any of its rights under this Plan without losing any of its rights.

**26. CONTINUED EFFECTIVENESS.** If the law makes any term(s) of this Plan unenforceable, the other terms will remain in effect.

**27. DUE ON SALE.** You promise to notify the Credit Union immediately if you enter into an agreement to sell or transfer ownership of all or any part of the property securing this account. If you sell or transfer ownership without first obtaining the written consent of the Credit Union, the Credit Union may exercise its rights described in the Security Instrument, including the right to demand immediate payment in full of all sums secured by the Security Instrument.

**28. THE FOLLOWING NOTICE IS REQUIRED BY CALIFORNIA LAW: TRANSFER OF THE PROPERTY.** Subject to applicable law, Lender shall have the right to accelerate, that is, to demand immediate payment in full    of all sums secured by this Mortgage or Deed of Trust, if Borrower, without the written consent of Lender, sells or transfers all or part of the Property or any rights in the Property.

**29. NOTICE TO GEORGIA BORROWERS.** This is an instrument under seal.

**30. NOTICE TO UTAH BORROWERS.** This written agree- ment is a final expression of the agreement between you and the credit union. This written agreement may not be contradicted by evidence of any oral agreement.

**31. THE FOLLOWING NOTICE IS REQUIRED BY NEW YORK LAW:** Default in the payment of this loan agreement may result in the loss of the property securing the loan. Under federal law, you may have the right to cancel this agreement. If you have this right, the creditor is required to provide you with a separate written note specifying the circumstances and times under which you can exercise this right.

© CUNA MUTUAL GROUP, 1998, 1999, 2000, 2001, ALL RIGHTS RESERVED                    EST104 (LASER)

| Virginia Credit Union | JOSEPH L BROWN | | Date | 12/12/2007 |

## BILLING RIGHTS – KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR STATEMENT.** If you think your statement is wrong, or if you need more information about a transaction on your statement, write us on a separate sheet at the address listed on your statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.

- The dollar amount of the suspected error.

- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay a credit card account automatically from your share account or share draft account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

**YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE.** We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the statement was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to send statements to you for the amount you question, including finance charges, and we can apply any

unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your statement that are not in question.

If we find that we made a mistake on your statement, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your statement. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your statement was correct.

**SPECIAL RULE FOR CREDIT CARD PURCHASES.** If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right: (a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and (b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

© CUNA MUTUAL GROUP, 1998, 1999, 2000, 2001, ALL RIGHTS RESERVED

EST104 (LASER)

**Virginia Credit Union, Inc.**
POB 90010
Richmond, VA 23225-9010
Phone (804) 323-6000
Toll Free 1-800-285-5051

**LOANLINER**
HOME EQUITY SYSTEM

## HOME EQUITY ADDENDUM

This Addendum is incorporated into and becomes a part of your LOANLINER® Credit Agreement and Truth in Lending Disclosure.

| OPENING DATE | FINAL PAYMENT DATE | CREDIT LIMIT | ACCOUNT NUMBER |
|---|---|---|---|
| 12/18/2007 | 01/25/2028 | 90,300.00 | |

| BORROWER NAME AND ADDRESS | ADDRESS OF PROPERTY SECURING ACCOUNT |
|---|---|
| JOSEPH L BOYKIN<br>DEIRDRE L BOYKIN<br>17 OLD SELLERS Wy<br>RICHMOND VA 23227 | 17 OLD SELLERS WAY<br>RICHMOND, VA 23227 |

☒ You elect PRODUCT I Home Equity Line of Credit    Home Equity Line of Credit payment option: ☒ Option 1 or ☐ Option 2

| INDEX RATE | MARGIN ADDED TO INDEX | ANNUAL PERCENTAGE RATE | DAILY PERIODIC RATE |
|---|---|---|---|
| 7.50% | 2.75% | 10.250% | 0.02808% |

☐ You elect PRODUCT II Home Equity Loan    DRAW PERIOD ___ years    REPAYMENT PERIOD ___ years    INITIAL PAYMENT $ _____

| ANNUAL PERCENTAGE RATE | DAILY PERIODIC RATE | MARGIN USED FOR FUTURE ADVANCES (if applicable) |
|---|---|---|
| % | % | |

SCHEDULE OF CLOSING COSTS:

| Description | Amount | | Description | Amount | |
|---|---|---|---|---|---|
| Appraisal Fee | $ | $0.00 | Recording Fees | $ | $333.00 |
| Credit Report | $ | $0.00 | | $ | |
| Flood Certificate | $ | $12.00 | | $ | |
| Home Value Estimator | $ | $15.00 | | $ | |
| Title Examination | $ | $70.00 | | $ | |

**AMOUNT YOU CAN BORROW.** The minimum credit limit or initial loan advance is $5,000. Qualified applicants may borrow up to 100% of the appraised or current assessed value of the property, less the balance of any first mortgage. To determine your possible available equity, subtract all applicable amounts owed on a mortgage(s) from the estimated market value of your home.

**INCREASING YOUR LINE OF CREDIT:** Once the Deed of Trust has been recorded, you must reapply and pay any applicable closing costs to increase or decrease your line of credit limit.

**OTHER CHARGES / FEES.** Please refer to loan approval documents for other fees and charges.

**FEE REIMBURSEMENT:** We will pay all of your closing costs. However, if you cancel or close this plan within 24 months of the opening date, you agree to reimburse us for all, or at our option, a portion of the closing costs paid by us.

**COLLATERAL:** The property you offer as security must be your primary residence or second home and must be located within the Commonwealth of Virginia. Any liens secured by the property except for a first mortgage must be paid off prior to or at closing. Eligible properties include 1 - 4 family homes and condominiums. Manufactured housing may not be eligible for maximum financing. Single wide manufactured homes, investment properties, and rental properties are not eligible. Other property restrictions may apply.

**ASSUMPTIONS.** Written permission and approval by the credit union is required.

**PLAN PRODUCTS.** We offer two products, a Home Equity Line of Credit and a Home Equity Loan. Please indicate your Product and if applicable, one corresponding option above. To choose another Product or option, you must re-apply. Following are terms that apply to each Product.

I.  **HOME EQUITY LINE OF CREDIT.** This product offers two Minimum Periodic Payment options further identified as Payment Option 1 and Payment Option 2. This product has a VARIABLE APR which means the APR, the corresponding periodic rate, and the minimum payment may change as a result. The APR includes only interest and no other costs. The

APR is based on the value of an index. The index is the Prime Rate published in the Wall Street Journal. When a range of rates has been published, the highest rate is used. We will use the most recent index value available to us as of the date of any APR adjustment. A change in the index rate generally will result in a change in the APR. To determine the APR that will apply to your account, we add a margin to the value of the index. Your margin is disclosed above and is based on certain credit criteria and your loan to value ratio. Then we divide this sum by the number of days in a year (365). To obtain the annual percentage rate we will multiply the periodic rate by the number of days in a year (365). This result is the annual percentage rate.

(a) **Draw and Repayment Period.** You can obtain advances of credit for 10 years, unless your rights to obtain advances of credit are otherwise suspended or canceled. After the draw period ends, you will no longer be able to obtain credit advances and must repay the outstanding balance. The length of the repayment period will also be 10 years.

(b) **Minimum Periodic Payment.** Payments are due monthly. You are required to make payments during both the draw and repayment periods. Your payment will never be less than $50 or the full amount that you owe. The minimum payment, may not for Payment Option 1 and will not for Payment Option 2, fully repay the principal that is outstanding on your credit line and your final payment will be a single "balloon" payment. Unless otherwise required by applicable law we are under no obligation to refinance the balloon payment at that time. You may be required to make payments out of other assets you own or find a lender, which may be us, willing to lend you the money. If you refinance the balloon with us, you may have to pay closing costs.

*Specific to Payment Option 1:* If the APR increases so much that your payment is no longer sufficient to repay the interest due, your payment will be increased by an amount sufficient to cover all accrued finance charges. Your payment will be 1.50% of your monthly balance, plus any amounts past due or exceeding your credit limit, along with any other charges due. A change in the APR can cause your

© CUNA MUTUAL INSURANCE SOCIETY, 1992, 1999 ALL RIGHTS RESERVED

SPECIAL EAD001 201710 (CVAAK7) 10/11/2006

loan balance to be repaid more quickly than usual. When rates decrease, less interest is due, so more of the payment repays the principal balance. When rates increase, more interest is due, so less of the payment repays the principal balance.

*Specific to Payment Option 2:* During the draw period, your minimum monthly payment will equal the finance charges that accrued on the outstanding balance during the preceding month, plus any amounts past due or exceeding your credit limit, along with any other charges due. During the repayment period, your minimum monthly payment will convert to the requirements set forth for Payment Option 1 (see above). Not making the required payments during the draw period will result in negative amortization, which will increase the amount you owe us and reduce your equity in your home.

(c) **Rate Changes.** The APR can change on the first day of each month. There is no limit on the amount by which the APR can change during any one-year period. The minimum APR is 4%.

(d) **Maximum Rate.** The maximum **ANNUAL PERCENTAGE RATE** is 18%.

II. **HOME EQUITY LOAN.** The initial APR you will receive is based on our certain credit criteria, an approximate term selected by you and approved by us, the amount of your loan request, and the loan-to-value (LTV) of the securing property. The initial APR is not based on the index and margin (if applicable) used to make later rate adjustments. To obtain the periodic rate, we divide the annual percentage rate by the number of days in a year (365). To obtain the annual percentage rate we multiply the periodic rate by the number of days in a year (365). If no subsequent loan advance is disbursed or you do not discontinue or terminate any APR discount programs, the initial APR will not change. Your initial APR is disclosed above. The APR includes only interest and no other costs.

Upon disbursal of a subsequent loan advance your APR will be the lesser of either our then published fixed APR and its corresponding rate in effect for a new or similar Home Equity Loan based on our then current credit criteria OR a rate determined by adding the value of the Index to the value of the Margin.

The APR for a subsequent loan advance includes these specifics: (1) the APR may be based on the value of an Index; (2) the Index is the Prime Rate published in the *Wall Street Journal*; (3) when a range of rates has been published, the highest rate is used; (4) we will use the most recent Index value available to us as of the date of any APR adjustment; (5) to determine the APR, we add a Margin to the value of the Index; (6) which Margin you will receive is based on our internal credit criteria, an approximate term selected by you and approved by us, the total amount of your Plan debt after disbursal of the advance, and the loan-to-value (LTV) of the securing property; (7) if applicable, an exact Index value, Margin and APR will be disclosed for the subsequent advance; (8) any subsequent loan advance must be approved by us and may include a review by us to determine your continued ability to repay your Plan debt; (9) a subsequent loan advance may result in an increase in your APR and/or your minimum monthly payment, which will extend the amount of time it takes you to repay your debt; (10) prior to disbursal of the subsequent loan advance you will be notified if your APR or minimum monthly payment amount is changing and at such time, you will have the option to cancel your loan request if you do not agree with the changed term(s); (11) your existing loan balance (if any) will be added to the new advance amount and the entire balance will be at the new APR.

**Draw and Repayment Period.** Your draw and repayment period are based upon the approximate term used to calculate your minimum payment and are disclosed above for your initial advance. Under no circumstances will your draw period be longer than 14 years.

(a) **Minimum Periodic Payment.** Your minimum periodic payment is a fixed payment amount and will remain the amount disclosed to you at closing. Payments are due

monthly. Your payment will never be less than $50 or the full amount that you owe. Your payment is based on your initial loan advance and an approximate term selected by you and approved by us. The approximate term used for calculating the payment cannot be less than 1 year or more than 15 years.

(b) **Transaction Requirements.** In addition to the requirements listed in the Amount You Can Borrow paragraph above, when you have paid down your principal balance in an amount that is equivalent to or greater than 10% of your original loan advance, you may request a subsequent loan advance, provided such subsequent loan advance when added to your principal balance does not exceed the amount of your original loan advance. A lesser advance to cover the amount of a share over-draft may be allowed, provided you have authorized us to consider your Home Equity Loan as an over-draft source.

(c) **Rate Changes.** Your APR will not change unless you request and we approve you to receive a subsequent loan advance. In such an instance, your APR will change on the day of the subsequent loan advance disbursement. There is no limit on the amount by which the APR can change. The minimum APR is 4%.

(d) **Maximum Rate.** The maximum **ANNUAL PERCENTAGE RATE** is 18%.

(e) **Additional APR Discounts.** Once determined, you may be eligible for an additional APR discount(s) offered by VACU. However, if you receive an APR discount based on your participation in a specific VACU program and your participation in such program is discontinued or terminated, your APR and corresponding daily periodic rate will increase to the published APR (before the additional discount) that you qualified for and that was in effect on the date of the loan advance. The increase will be effective on the last day of the month. This rate increase may result in more monthly payments; however the amount of your minimum monthly payment will not change.

**COLLECTION COSTS:** You agree to pay all costs of collecting the amount you owe under this Agreement, including court costs and reasonable attorney fees.

**SHAREDRAFT ACCESS:** We may authorize you to obtain credit advances by writing sharedrafts on your home equity account. We reserve the right not to honor a sharedraft in the following circumstances:

(a) Your Credit Limit has been or would be exceeded by paying the sharedraft.

(b) Your sharedraft is post-dated. If a post-dated sharedraft is paid and as a result any other check is returned or not paid, we are not responsible.

(c) Your sharedrafts have been reported lost or stolen. You should notify us at once if your sharedrafts are lost or stolen.

(d) Your sharedraft is not signed by an "Authorized Signer", which means a person who signed this Agreement, or has signed a separate signature card for the account.

(e) Your account has been terminated or suspended as provided in this Agreement.

(f) The amount of your sharedraft is less than the minimum amount required by this Agreement or you are in violation of any other transaction requirement.

If we pay any sharedraft under these conditions, you must repay us for the amount of the sharedraft and any charges permitted by law. The sharedraft itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a sharedraft is limited to your actual damages. Dishonor for any reason as provided in the Agreement is not wrongful dishonor. We may not return the sharedrafts along with your periodic statements; however, your use of a sharedraft will be reflected on your periodic statement as a credit advance. We do not "certify" sharedrafts drawn on your account.

CUNA MUTUAL INSURANCE SOCIETY, 1992, 1999 ALL RIGHTS RESERVED

Instrument Control Number

LR 200707063894 12/27/2007 9:07:00 AM

## Commonwealth of Virginia
### Land Record Instruments
### Cover Sheet - Form A

[ILS VLR Cover Sheet Agent 1.0.87]

BK 4453 PG 2437

T A X   E X E M P T

C O R P

Date of Instrument:   [12/12/2007 ]

Instrument Type:   [RFDT        ]

Number of Parcels   [     1]

Number of Pages   [     8]

City ☐ County ☒  [Henrico County          ]

(Box for Deed Stamp Only)

**First and Second Grantors**

| Last Name | First Name | Middle Name or Initial | Suffix |
|---|---|---|---|
| [BOYKIN | ] [JOSEPH | ] [L | ] [ |
| [BOYKIN | ] [DEIRDRA | ] [ | ] [ |

**First and Second Grantees**

| Last Name | First Name | Middle Name or Initial | Suffix |
|---|---|---|---|
| [NAGLE | ] [DAVID | ] [E | ] [ TP |
| [ Hill | ] [ Katja | ] [ | ] [ TP |

Grantee Address   (Name)   [DAVID E NAGLE                        ]
                  (Address 1)   [707 E MAIN STREET, 11TH FLOOR        ]
                  (Address 2)   [                                    ]
                  (City, State, Zip) [RICHMOND          ] [VA ] [23219 ]

Consideration [90,300.00     ] Existing Debt [0.00      ] Assumption Balance [30,000.00     ]

Prior Instr. Recorded at: City ☐ County ☒ [Henrico County    ] Percent. in this Juris.   [   100]

Book   [4146  ]        Page   [1412  ]        Instr. No   [          ]

Parcel Identification No (PIN)   [796-751-6980                      ]

Tax Map Num.   (if different than PIN)   [796-751-6980              ]

Short Property Description   [LOT 85, BL B, STERLING FOREST 3       ]
                             [                                      ]

Current Property Address (Address 1)   [17 OLD SELLERS WAY          ]
                         (Address 2)   [                            ]
                         (City, State, Zip) [RICHMOND     ] [VA ] [23227 ]

Instrument Prepared By   [R HAWLEY                                  ]

Recording Paid for By   [FIRST AMERICAN LENDERS ADVANTAGE           ]

Return Recording To (Name)   [FIRST AMERICAN TITLE INSURANCE LENDERS ADVANTAGE]
                   (Address 1)   [1100 SUPERIOR AVENUE, SUITE 200    ]
                   (Address 2)   [                                   ]
                   (City, State, Zip)   [CLEVELAND        ] [OH] [44114 ]

Customer Case ID   [13669685     ] [          ] [         ] [       ]

Cover Sheet Page # 1 of 1



MOVANT'S EXHIBIT B

BK4453PG2438

PREPARED BY *R. Hawley*

Virginia Credit Union
When recorded mail to:
*FIRST AMERICAN TITLE INSURANCE*
*·LENDERS ADVANTAGE*
*|1100 SUPERIOR AVENUE, SUITE 200*
*¡CLEVELAND, OHIO 44114*
*ATTN: FT1120*

TAX MAP/PARCEL ID NUMBER
796-751-6980 REFINANCE

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CREDIT LINE DEED OF TRUST

NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS
THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY
CONVEYED. THIS DEED OF TRUST CONTAINS A DUE-ON-SALE PROVISION AND SECURES
INDEBTEDNESS UNDER A CREDIT AGREEMENT WHICH PROVIDES FOR A REVOLVING LINE
OF CREDIT AND MAY CONTAIN A VARIABLE RATE OF INTEREST.

THIS DEED OF TRUST ("Security Instrument") is made on _____12/12/2007_____. The
Grantor is
Joseph L BOYKIN and
Deirdra BOYKIN

("Borrower"). The Trustee is David E. Nagle and Katja Hill
("Trustee"), whose address is ___707 E. Main Street, 11th Floor_____Richmond, VA 23219___.
The Beneficiary is ___Virginia Credit Union_____, a corporation organized and
existing under the laws of___Virginia____
whose address is ___PO Box 90010_____
____Richmond, VA 23225_____ ("Lender").

IN CONSIDERATION of the indebtedness herein recited and the trust herein created;
TO SECURE to Lender:
(1) The repayment of all indebtedness due and to become due under the terms and conditions of the
LOANLINER Home Equity Plan Credit Agreement and Truth-in-Lending Disclosures made by
Borrower and dated the same day as this Security Instrument, and all modifications,
amendments, extensions and renewals thereof (herein "Credit Agreement"). Lender has agreed
to make advances to Borrower under the terms of the Credit Agreement, which advances will be
of a revolving nature and may be made, repaid and remade from time to time. Borrower and
Lender contemplate a series of advances to be secured by this Security Instrument. The total
outstanding principal balance owing at any one time under the Credit Agreement (not including
finance charges thereon at a rate which may vary from time to time, and any other charges and
collection costs which may be owing from time to time under the Credit Agreement) shall not
exceed NINETY THOUSAND THREE HUNDRED and 00/100_____
($90,300.00_____). That sum is referred to herein as the Maximum Principal Balance
and referred to in the Credit Agreement as the Limit. On the Final Payment Date, ___20__ years
from the date of this Security Instrument, the entire indebtedness under the Credit Agreement, if
not paid earlier, is due and payable.
(2) The payment of all other sums advanced in accordance herewith to protect the security of this
Security Instrument, with finance charges thereon at a rate which may vary as described in the
Credit Agreement.
(3) The performance of Borrower's covenants and agreements under this Security Instrument and
under the Credit Agreement.
BORROWER irrevocably grants and conveys to Trustee, in trust, with power of sale, the following
described property located in the County of ___Henrico County_____, State of
Virginia.

© ¹CUNA MUTUAL INSURANCE SOCIETY, 1991, 2000, 07, ALL RIGHTS RESERVED          Page 1          EVA94C (LASER)

BK4453PG2439

SEE SCHEDULE A ATTACHED

THIS DEED OF TRUST IS EXEMPT FROM RECORDATION ON ALL DEBT SECURED HEREBY UP
TO $30,000.00             AS A REFINANCE OF THE EXISTING LOAN WITH THE SAME LENDER
PURSUANT TO VIRGINIA CODE SECTION 58.1-803(D). THE ORIGINAL DEED OF TRUST WAS
RECORDED AS   BOOK 4146 PAGE 1412     .

which has the address of   17 OLD SELLERS WAY                                              ,
                                                            (Street)

  RICHMOND                                        , Virginia  23227          (herein "Property Address");
                    (City)                                            (Zip Code)

    TOGETHER with all the improvements now or hereafter erected on the property, and all easements,
rights, appurtenances and fixtures, all of which shall be deemed to be and remain a part of the property
covered by this Security Instrument; and all of the foregoing, together with said property (or the
leasehold estate if this Security Instrument is on a leasehold) are hereinafter referred to as the
"Property".

Complete if applicable:
This Property is part of a condominium project known as_____
_____
_____
This Property includes Borrower's unit and all Borrower's rights in the common elements of the
condominium project.
This Property is in a Planned Unit Development known as_____
_____
_____
_____

    Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right
to grant and convey that the Property is unencumbered, except for encumbrances of record. Borrower
warrants and will defend generally the title to the Property against all claims and demands, subject to
encumbrances of record.
    Borrower and Lender covenant and agree as follows:
    1.    Payment of Principal, Finance Charges and Other Charges. Borrower shall promptly pay
when due all amounts borrowed under the Credit Agreement, all finance charges and applicable other
charges and collection costs as provided in the Credit Agreement.
    2.    Funds for Taxes and Insurance. Subject to applicable law, Lender, at Lender's option, may
require Borrower to pay to Lender on the day monthly payments of principal and finance charges are
payable under the Credit Agreement, until all sums secured by this Security Instrument are paid in full, a
sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium
and planned unit development assessments, if any) which may attain priority over this Security
Instrument, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for
hazard insurance and flood insurance, if applicable, all as reasonably estimated initially and from time to
time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall
not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such
payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.
    If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts
of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an
institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and
ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or
verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds
and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at
the

EVA94C (LASER)

BK4453PG2440

time of execution of this Security Instrument that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Security Instrument.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 22 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

3.  **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Credit Agreement and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, second, (in the order Lender chooses) to any finance charges, other charges and collection costs owing, and third, to the principal balance under the Credit Agreement.

4.  **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument, including Borrower's covenants to make payments when due. Except to the extent that any such charges or impositions are to be paid to Lender under paragraph 2, Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Security Instrument, and leasehold payments or ground rents, if any. Within five days after any demand by Lender, Borrower shall exhibit to Lender receipts showing that all amounts due under this paragraph have been paid when due.

5.  **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," floods and such other hazards as Lender may require and in such amounts and for such periods as Lender may require. Unless Lender in writing requires otherwise, the policy shall provide insurance on a replacement cost basis in an amount not less than that necessary to comply with any coinsurance percentage stipulated in the hazard insurance policy, and the amount of coverage shall be no less than the Maximum Principal Balance plus the full amount of any lien which has priority over this Security Instrument.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. All insurance proceeds are hereby assigned to Lender and shall be paid to Lender to the extent of all sums secured by this Security Instrument, subject to the terms of any mortgage, deed of trust or security agreement with a lien which has priority over this Security Instrument. Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restore or repair the Property, if it is economically feasible to do so.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Security Instrument.

6.  **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Security Instrument is on a leasehold. If this Security Instrument is on a unit in a condominium or a

BK4453PG2441

planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and the constituent documents.

7.  **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. Any amounts disbursed by Lender pursuant to this paragraph 7, with finance charges thereon, at the rate provided in the Credit Agreement, shall become additional indebtedness of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder. Any action taken by Lender under this paragraph shall not cure any breach Borrower may have committed of any covenant or agreement under this Security Instrument. Borrower agrees that Lender is subrogated to all of the rights and remedies of any prior lienor, to the extent of any payment by Lender to such lienor.

8.  **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9.  **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, to the extent of any indebtedness under the Credit Agreement, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument.

10.  **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11.  **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors   and assigns of Lender and Borrower, subject to the provisions of paragraph 21 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Security Instrument, but does not execute the Credit Agreement, (a) is co-signing this Security Instrument only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Security Instrument, (b) is not personally liable under the Credit Agreement or under this Security Instrument, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations or amendments with regard to the terms of this Security Instrument or the Credit Agreement, without that Borrower's consent and without releasing that Borrower or modifying this Security Instrument as to that Borrower's interest in the Property.

12.  **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing such notice by First class mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by First class mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Security Instrument shall be deemed  to have been given to Borrower or Lender when given in the manner designated herein.

13.  **Governing Law; Severability.** The state and local laws applicable to this Security Instrument shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Security Instrument. In the event that any provision or clause of this Security Instrument or the Credit Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Credit Agreement which can be given effect without the conflicting provision, and to this end the provisions of this Security Instrument and the Credit Agreement are declared to be severable. As used herein, "costs,"

EVA94C (LASER)

BK4453PG2442

**14. Prior Mortgage or Deed of Trust; Modification; Future Advance.** Borrower shall not enter into any agreement with the holder of any mortgage, deed of trust or other security agreement which has priority over this Security Instrument by which that security agreement is modified, amended, extended, or renewed, without the prior written consent of the Lender. Borrower shall neither request nor accept any future advance under a prior mortgage, deed of trust, or other security agreement without the prior written consent of Lender.

**15. Borrower's Copy.** Borrower shall be furnished a copy of the Credit Agreement and of this Security Instrument at the time of execution or after recordation hereof.

**16. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower may enter into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**17. Waiver of Homestead Exemption.** To the extent permitted by law, Borrower hereby waives the benefit of the homestead exemption as to all sums secured by this Security Instrument.

**18. Waiver of Statutes of Limitation.** To the extent permitted by law, Borrower hereby waives statutes of limitation as a defense to any demand or obligation secured by this Security Instrument.

**19. Merger.** There shall be no merger of the interest or estate created by this Security Instrument with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**20. Notice of Transfer of the Property; Advances after Transfer.** Borrower shall give notice to Lender, as provided in paragraph 12 hereof, prior to any sale or transfer of all or part of the Property or any rights in the Property. Any person to whom all or part of the Property or any right in the Property is sold or transferred also shall be obligated to give notice to Lender, as provided in paragraph 12 hereof, promptly after such transfer.

Even if Borrower transfers the Property, Borrower will continue to be obligated under the Credit Agreement and this Security Instrument unless Lender releases Borrower in writing. As a condition to Lender's consent to any proposed transfer or as a condition to the release of Borrower, Lender may require that the person to whom the Property is transferred sign an assumption agreement satisfactory to Lender and Lender may impose an assumption fee. The assumption agreement will not entitle the person signing it to receive advances under the Credit Agreement.

**21. Transfer of the Property.** Subject to applicable law, Lender shall have the right to accelerate, that is, to demand immediate payment in full of all sums secured by this Mortgage or Deed of Trust, if Borrower, without the written consent of Lender, sells or transfers all or part of the Property or any rights in the Property.

If Lender exercises the option to accelerate, Lender shall give Borrower notice of acceleration in accordance with paragraph 12 hereof. The notice shall provide a period of not less than 30 days from the date of the notice within which Borrower may pay the sums declared due. If Borrower fails to pay those sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 22 hereof.

**22. Default; Termination and Acceleration; Remedies.** Each of the following events shall constitute an event of default ("event of default") under this Security Instrument: (1) Borrower commits fraud or makes a material misrepresentation in connection with this Security Instrument or the Credit Agreement; (2) Borrower does not meet the repayment terms of the Credit Agreement; or (3) Borrower's action or inaction adversely affects the Lender's rights in the Property secured by this Security Instrument. If an event of default occurs, then prior to acceleration, exercising any right or remedy provided for in this Security Instrument, then prior to acceleration, Lender shall give notice as provided in paragraph 12 hereof. The notice shall specify: (a) the event of default; (b) the action required to cure the event of default; (c) a date not less than ten days from the date the notice is given to Borrower by which the event of default must be cured; (d) that failure to cure the event of default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of an event of default or any other defense of Borrower to acceleration and sale. If the event of default is not cured on or before the date specified in the notice, Lender, at Lender's option, without further notice or demand, may declare default, may declare all sums secured by this Security Instrument to be immediately due and payable, and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 22, including, but not limited to, reasonable attorneys' fees.

EVA94C (LASER)

BK4453PG2443

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower (and the owner of the Property, if a different person) notice of sale in the manner prescribed by applicable law. Trustee shall give public notice of sale by advertising, in accordance with applicable law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which the Property or some portion thereof is located, and by such additional or different form of advertisement as the Trustee may deem advisable, if any. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with applicable law. Lender, or Lender's designee, may purchase the Property at any sale.

Trustee shall deliver to the purchaser a Trustee's deed conveying the Property so sold with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, Trustee's fees of _____5.00_____ % of the gross sale price, reasonable attorneys' fees and costs of title evidence; (b) to the discharge of all taxes, levies and assessments on the Property, if any, as provided by applicable law; (c) to all sums secured by this Security Instrument; and (d) the excess, if any, to the person or persons legally entitled thereto. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at such sale.

**23. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to any power of sale contained in this Security Instrument or (ii) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which would then be due under this Security Instrument and the Credit Agreement had no acceleration occurred; (b) cures all other events of default under this Security Instrument and the Credit Agreement; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 21.

**24. Release.** This Security Instrument secures a revolving line of credit and advances may be made, repaid, and remade from time to time under the terms of the Credit Agreement. When, according to the terms of the Credit Agreement, no more advances will be made, and Borrower has paid all sums secured by this Security Instrument (or earlier if required by applicable law), Lender shall request Trustee to release this Security Instrument and shall surrender the Credit Agreement to Trustee. Trustee shall release this Security Instrument. To the extent permitted by law, Lender may charge Borrower a fee for such release and require Borrower to pay costs of recordation, if any.

**25. Substitute Trustee.** Lender may from time to time in Lender's discretion remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

EVA94C (LASER)

BK4453PG2444

## REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
## UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Instrument to give Notice to Lender, at Lender's address set forth on page one of this Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

X _Joseph L. Boykin_

JOSEPH L BOYKIN                                                   (Seal)
                                                              Borrower

X _Deirdra L. Boykin_

DEIRDRA L BOYKIN                                                  (Seal)
                                                              Borrower

X _____

_____                          (Seal)
                                                              Borrower

X _____

_____                          (Seal)
                                                              Borrower

PHILIP ALBERT CHILDRESS, JR.
Notary Public
Commonwealth of Virginia
My Commission Expires November 30, 2010
Commission ID# 268514

Use this acknowledgment for individual(s) acting on her/his own behalf.

STATE OF VIRGINIA, ☐ City ☒ County of _Henrico_                          ss:

The foregoing instrument was acknowledged before me this _12/12/2007_ _____ day of
_____, by _____
JOSEPH L BOYKIN
DEIRDRA L BOYKIN
_____

_____
(person(s) acknowledged)

Notary Public _____

Registration Number _268514_

My Commission expires _11-30-2010_

Use this acknowledgment for individual(s) acting in a representative capacity (e.g., as a trustee for a trust).

STATE OF VIRGINIA, ☐ City ☐ County of _____        ss:

The foregoing instrument was acknowledged before me this _____ day of
_____, by _____
_____

_____

Notary Public _____

Registration Number_____

My Commission expires _____

EVA94C (LASER)

BK4453PG2445

EXHIBIT A

ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND, WITH ALL
IMPROVEMENTS THEREON AND APPURTENANCES THERETO BELONGING,
LYING AND BEING IN THE FAIRFIELD DISTRICT, HENRICO COUNTY,
VIRGINIA, KNOWN, NUMBERED AND DESIGNATED AS LOT 85, BLOCK B,
AS SHOWN ON SUBDIVISION PLAT ENTITLED "STERLING FOREST 3",
PREPARED BY BAY DESIGN GROUP, ENGINEERING, SURVEYING & LAND
PLANNING, DATED OCTOBER 18, 2002 AND RECORDED IN THE CLERK'S
OFFICE, CIRCUIT COURT OF HENRICO COUNTY, VIRGINIA, IN PLAT
BOOK 117, PAGES 12-17, REFERENCE TO WHICH PLAT IS HEREBY MADE
FOR A MORE PARTICULAR DESCRIPTION OF THE PROPERTY HEREIN
CONVEYED.

Permanent Parcel Number:  796-751-6980
JOSEPH L. BOYKIN AND DEIRDRE L. BOYKIN, HUSBAND AND WIFE,
AS TENANTS BY THE ENTIRETY WITH THE COMMON LAW RIGHT
OF SURVIVORSHIP

17 OLD SELLERS WAY, RICHMOND VA 23227
Loan Reference Number  :  ███████
First American Order No:  ███████
Identifier: FIRST AMERICAN LENDERS ADVANTAGE

███████ BOYKIN
                        VA
FIRST AMERICAN LENDERS ADVANTAGE
DEED OF TRUST

INSTRUMENT #63894
RECORDED IN THE CLERK'S OFFICE OF
HENRICO COUNTY ON
DECEMBER 27, 2007 AT 09:07AM
YVONNE G. SMITH, CLERK

RECORDED BY: MMM